**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STONE & PAPER INVESTORS, LLC, individually and derivatively on behalf of CLOVIS HOLDINGS LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2018-0394-PAF |
| RICHARD BLANCH, VIVIANNA BLANCH, RED BRIDGE & STONE, LLC, BRIAN SKINNER, and SKINNER CAPITAL, LLC, | ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| CLOVIS HOLDINGS LLC, | ) ) | |
| Nominal Defendant. | ) ) | |
| RICHARD BLANCH, RED BRIDGE & STONE, LLC, and CLOVIS HOLDINGS LLC, | ) ) ) | |
| Counterclaim and Third-Party Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| STONE & PAPER INVESTORS, LLC, JAD TRADING, LLC, DIAMOND CARTER TRADING, LLC, JOHN DIAMOND, KANOKPAN KHUMPOO, ALBERT CARTER, ELIZABETH CARTER, EISENBERG & BLAU, CPAS, P.C., DDK & COMPANY, LLP, and RICHARD EISENBERG, | ) ) ) ) ) ) ) ) | |
| Counterclaim and Third-Party Defendants. | ) ) ) | |

# MEMORANDUM OPINION

Date Submitted: March 26, 2020
Date Decided: June 29, 2020

Richard I. G. Jones, Jr., BERGER HARRIS LLP, Wilmington, Delaware; David Lackowitz, Zaid Shukri, MOSES & SINGER LLP, New York, New York; *Attorneys for Plaintiff and Counterclaim Defendant Stone & Paper Investors, LLC and Third-Party Defendants JAD Trading, LLC, Diamond Carter Trading, LLC, John Diamond, Kanokpan Khumpoo, Albert Carter, and Elizabeth Carter.*

Catherine Damavandi, NURICK LAW GROUP, LLC; *Attorney for Defendants and Counterclaim and Third-Party Plaintiffs Richard Blanch, Red Bridge & Stone, LLC, and Clovis Holdings, Inc., and Defendant Vivianna Blanch.*

Evan O. Williford, THE WILLIFORD FIRM LLC, Wilmington, Delaware; *Attorney for Defendants Brian Skinner and Skinner Capital, LLC.*

**FIORAVANTI, Vice Chancellor**

This case presents a dispute among the members and managers of a Delaware limited liability company that was created to produce and sell stone-based paper products. The company's non-managing member, Stone & Paper Investors, LLC ("Stone & Paper"), alleges the company's two managers breached their fiduciary duties and the company's limited liability company agreement by spending the company's capital on themselves while doing nothing to advance the company. After the Court denied the defendants' motion to dismiss the complaint, the company and two of the defendants filed counterclaims and third-party claims alleging that Stone & Paper and its affiliates spent the company's capital on themselves, breached the limited liability company agreement, committed fraud, converted company funds, were unjustly enriched, and aided and abetted breaches of fiduciary duty. This opinion resolves a motion to dismiss the counterclaims and third-party claims.

Under the plaintiff-friendly standard of Court of Chancery Rule 12(b)(6), the Court concludes the counterclaims state claims for breach of contract and unjust enrichment. The claims of fraudulent inducement, fraud, conversion, and aiding and abetting a breach of fiduciary duty, however, are unsupported by any well-pleaded allegations and are dismissed for failure to state a claim. Accordingly, the motion

to dismiss the counterclaims and third-party claims is granted in part and denied in part as to the moving parties.[1]

## I. FACTUAL BACKGROUND

The facts recited in this opinion come from Defendants Richard Blanch, Red Bridge & Stone, LLC, and Nominal Defendant Clovis Holdings LLC's Answer and Affirmative Defenses to the Complaint, Counterclaim and Third Party Complaint (the "Counterclaims" or "Countercl."),[2] the exhibit attached thereto, and the document incorporated by reference into the Counterclaims.[3]

### A. The Parties

Defendants Brian Skinner ("Skinner") and Richard Blanch ("Blanch") and Third-Party Defendants John Diamond ("Diamond") and Albert Carter ("Carter") have a history of business dealings. Among other ventures, Blanch, Skinner, Diamond, and Carter had a business relationship with cosmetics company Maison de Beaute, LLC ("Maison de Beaute"). In 2013, they collectively pursued a business aimed at making paper out of stone. The entity created to conduct that business is Clovis Holdings LLC ("Clovis" or the "Company"). Clovis is governed by a

---

[1] As explained below, three of the Third-Party Defendants were never served with the Counterclaims and have not appeared in this action.

[2] Dkt. 64.

[3] Richard Blanch, Red Bridge & Stone, LLC, and Clovis Holdings LLC are collectively referred to as the "Counterclaim Plaintiffs."

Limited Liability Company Operating Agreement as of January 1, 2014 (the "LLC Agreement").[4]

Blanch and Skinner are the two designated managers of Clovis under the LLC Agreement. Clovis has three members: Red Bridge & Stone, LLC ("Red Bridge") and Skinner Capital, LLC ("Skinner Capital") are common members, and Stone & Paper is a preferred member. Blanch and Defendant Vivianna Blanch are affiliated with Red Bridge. Skinner is affiliated with Skinner Capital.

Stone & Paper has two members: Diamond and non-party Carter Financial. Diamond is a managing member of Stone & Paper. He is also a managing member of Third-Party Defendants Diamond Carter Trading, LLC ("Diamond Carter Trading") and JAD Trading, LLC ("JAD Trading"). Third-Party Defendant Kanokpan Khumpoo ("Khumpoo"), is a member of JAD Trading. She is also married to Diamond.

Carter is a managing member of Carter Financial, and his wife, Elizabeth Carter,[5] is a member of Carter Financial. Carter is also a managing member of

---

[4] Verified Compl. ("Compl.") Ex. A (Dkt. 1). The LLC Agreement is incorporated by reference into the Counterclaims. *See Morrison v. Berry*, 191 A.3d 268, 276 n.20 (Del. 2018) ("[W]hen a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint; this is true even where the documents are not expressly incorporated into or attached to the complaint." (quoting *Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012), *aff'd*, 58 A.3d 414 (Del. 2013)).

[5] Defendant Vivianna Blanch and Third-Party Defendant Elizabeth Carter will be referred to by their full names. No disrespect is intended.

Diamond Carter Trading. Skinner was the Chief Operating Officer of Diamond Carter Trading. Stone & Paper, Diamond Carter Trading, JAD Trading, Carter, Diamond, Khumpoo, and Elizabeth Carter are collectively referred to as the "Movants."

Third-Party Defendants Eisenberg & Blau, CPAs ("Eisenberg & Blau") and its successor DDK & Company ("DDK") are New York accounting firms that provided accounting services to Stone & Paper and Clovis. Third-Party Defendant Richard Eisenberg ("Eisenberg," collectively with Eisenberg & Blau and DDK, the "Eisenberg Parties") is an accountant who managed Eisenberg & Blau and DDK.[6]

### B. The Alleged Misappropriation of Clovis's Funds

Stone & Paper contributed $3,500,000 to Clovis. That was the sole capital investment in the Company. The parties agree the funds have been dissipated, but they disagree as to what happened and who is to blame. Stone & Paper alleges that Blanch and Skinner, the managers of the Company, breached their fiduciary and contractual duties by spending the Company's capital on personal expenses while doing nothing to advance the Company.

---

[6] Based on the docket, it appears that the Eisenberg Parties have not been served with the Counterclaims and Third-Party Complaint, which would explain why they have not appeared in this action. The only claim asserted against the Eisenberg Parties is for aiding and abetting a breach of fiduciary duty.

4

The Counterclaims present a different narrative. They assert that Stone & Paper's complaint is merely a "cover up" for the Counterclaim Defendants' own misappropriation of Clovis's funds.[7] The Counterclaim Plaintiffs allege that Stone & Paper's capital contribution was in name only, and Stone & Paper treated the assets of Clovis like a "private slush fund" for itself, Carter, Diamond, Elizabeth Carter, Khumpoo, Diamond Carter Trading, and JAD Trading.[8] The Counterclaims allege that Stone & Paper "practically exercised board-level control" over Clovis, its assets, and the preparation of its tax returns.[9]

Clovis did not directly pay all of its expenses. Instead, Clovis charged expenses to an American Express card "managed" by Carter and held by Diamond Carter Trading.[10] Expenses for Carter, Diamond, Elizabeth Carter, Khumpoo, Diamond Carter Trading, JAD Trading, and Maison de Beaute were comingled on the same American Express card. When Diamond Carter Trading or JAD Trading were low on funds, Clovis paid for Diamond Carter Trading and JAD Trading's American Express charges. Clovis's funds were also used to make payments for Diamond's investment newsletter, an Amazon server used by Diamond Carter Trading and JAD Trading, Diamond and Khumpoo's personal internet and cable

---

[7] Countercl. ¶¶ 85, 207.

[8] *Id.* ¶ 78.

[9] *Id.* ¶¶ 144, 188.

[10] *Id.* ¶ 148.

service, charitable event sponsorships, and event tickets. The Counterclaims do not specify whether Clovis paid for all of these items directly or did so indirectly by reimbursing Diamond Carter Trading for charges on its American Express card. Emails attached as an exhibit to the Counterclaims suggest the latter. The Counterclaims allege Clovis paid more than $1,250,000 for American Express charges "that were wholly unrelated to Clovis Holdings."[11] The Counterclaims do not allege the dates or amounts of any of the alleged payments or American Express charges.

The Counterclaims allege that Stone & Paper directly paid itself $10,000 monthly for a total of $110,000 from Clovis's bank account despite providing no services or other consideration to Clovis in return. The Counterclaims also allege that Diamond Carter Trading and JAD Trading "took approximately $2,000,000 from Clovis Holdings for themselves."[12] The Counterclaims lack any factual allegations describing this alleged taking of $2 million from Clovis's funds.

The Counterclaim Plaintiffs attached to their Counterclaims a selection of emails among Blanch, Skinner, Diamond, Carter, and Clovis's accountants. The emails appear to indicate that one of Clovis's managers, Skinner, authorized several American Express card reimbursements to Diamond Carter Trading. On August 9,

---

[11] *Id.* ¶ 205.

[12] *Id.* ¶ 169.

2015, Skinner, who was also the Chief Operating Officer of Diamond Carter Trading, explained to the Company's accountants, "here are the Clovis charges that I put on the [Diamond Carter Trading] credit card…total of $56,876.54[.] [I]n 2014 Clovis paid $50000.00 directly to Amex on behalf of [Diamond Carter Trading]."[13] On August 31, 2015, Eisenberg asked Skinner whether a charitable donation should be placed on the books for Clovis or Diamond Carter Trading; Diamond responded, copying Skinner, that the donation may be placed on the books for Diamond Carter Trading.[14] On July 22, 2016, Skinner participated in an email exchange regarding the allocations of American Express charges between Diamond Carter Trading and Clovis.[15] On February 23, 2018, Skinner explained he previously decided to have Clovis pay American Express charges on behalf of Diamond Carter Trading, JAD Trading, and others:

> I think 2015 we had a high [Diamond Carter Trading] Amex bill..which *we decided to pay with Clovis and then use Clovis to pay the Amex going forward (even if it was a [Diamond Carter Trading] charge since [Diamond Carter Trading] had little funds* . . . All charges for [Diamond Carter Trading], Clovis, JAD [Trading] (Berg newsletter) and a few times Maison [de Beaute] came from the Clovis checking over the last few years.[16]

---

[13] *Id.* Ex. 1 at 13 (Aug. 9, 2015 Email Chain).

[14] *Id.* at 15 (Aug. 31, 2015 Email Chain).

[15] *Id.* at 22 (July 22, 2016 Email Chain).

[16] *Id.* at 39 (Mar. 20, 2018 Email Chain) (emphasis added).

The Counterclaims further allege that the Eisenberg Parties aided and abetted certain of the Movants in draining Clovis of its assets and, as discussed below, allowing Diamond to control the Company's tax returns while keeping Skinner and Blanch in the dark. The emails attached to the Counterclaims, however, show that Skinner authorized numerous transactions on behalf of Clovis and informed Eisenberg about them.

### C. Clovis's Tax Returns

From Clovis's founding until December 2017, the Eisenberg Parties prepared Clovis's tax returns. The Counterclaims allege that Eisenberg had a close relationship with Stone & Paper and would often communicate with Diamond about Clovis's tax returns rather than Clovis's managers—Blanch and Skinner. The emails attached to the Counterclaims, however, show Diamond forwarding his emails from Eisenberg to Skinner.[17] The Counterclaims accuse Stone & Paper, Diamond Carter Trading, and JAD Trading of conspiring with the Eisenberg Parties to interfere with the preparation of Clovis's tax returns. For example, Stone & Paper is alleged to have reneged on a prior agreement to reclassify certain guaranteed payments to Blanch as loans, and then causing the Company to file a 2015 tax return that did not

---

[17] *See id.* at 18 (Sept. 13, 2015 Email Chain) (Diamond forwarding Eisenberg's questions regarding Clovis's tax returns to Skinner. Skinner responds, "[Eisenberg] should direct questions about Clovis to me. Makes no sense to relay the answers.").

8

reflect the loan reclassification. The Counterclaims allege the tax return was later amended to reflect the payments as loans, as originally agreed.

The accounting firm of Citrin Cooperman replaced DDK for the Company's 2017 tax filing. The Counterclaims contend that Stone & Paper continued to exercise "board-level control" in the preparation of Clovis's 2017 tax returns, including by Diamond asking Citrin Cooperman not to file the tax return or to make final decisions with Clovis until he had an opportunity to review certain issues with his accountant.[18] An email attached to the Counterclaims, however, reflects that Citrin Cooperman invited Diamond's participation in the preparation of Clovis's 2017 tax return by asking Diamond about a loan between Diamond Carter Trading and Clovis.[19] Diamond responded, "I need some time to review these points with my accountant. Please don't file the 2017 Clovis tax return or make any final decisions regarding these points until we give our comments."[20] The emails attached to the Counterclaims show that Citrin Cooperman took instruction for completing and filing Clovis's 2017 tax return from Blanch and Skinner, not Diamond.[21]

Citrin Cooperman also informed Blanch that Diamond had been listed as a managing member of Clovis on the Company's 2014, 2015, and 2016 tax returns

---

[18] *Id.* ¶¶ 188-89.

[19] *Id.* Ex. 1 at 38 (Mar. 20, 2018 Email Chain).

[20] *Id.*

[21] *See id.* at 32-33 (Mar. 20, 2018 Email Chain).

9

even though only Blanch and Skinner were the sole managers of Clovis. The Counterclaims do not allege any damages resulting from any of the Movants' involvement in Clovis's tax returns.

### D. This Litigation

On May 31, 2018, Stone & Paper filed its Complaint. The Complaint asserted multiple claims: a direct claim against Blanch and Skinner for breaches of the LLC Agreement; derivative claims on behalf of Clovis against Blanch and Skinner for breaches of the LLC Agreement and for breaches of fiduciary duty; and a derivative claim against Skinner Capital, Red Bridge, and Vivianna Blanch for aiding and abetting breaches of fiduciary duties. Skinner and Skinner Capital answered the Complaint, while Blanch, Vivianna Blanch, Red Bridge, and Clovis moved to dismiss the Complaint. On May 31, 2019, this Court denied the motion to dismiss.

On July 24, 2019, the Counterclaim Plaintiffs filed the Counterclaims. On September 27, 2019, the Movants moved to dismiss the Counterclaims (the "Motion to Dismiss"). On March 25, 2020, this Court held oral argument on the Motion to Dismiss.

## II. ANALYSIS

The Movants seek dismissal on two grounds. First, they argue the Court lacks personal jurisdiction over Diamond Carter Trading and Khumpoo. Second, they contend the Counterclaims must be dismissed in their entirety for failure to state a

10

claim. The Movants argue, in the alternative, that absent dismissal of the Counterclaims in their entirety, the Court should order the Counterclaim Plaintiffs to provide a more definite statement. The Movants have also moved to strike certain allegations in the Counterclaims as immaterial, impertinent, and scandalous.

## A. Motion to Dismiss for Lack of Personal Jurisdiction

Diamond Carter Trading and Khumpoo—non-Delaware residents—have moved to dismiss under Court of Chancery Rule 12(b)(2) for lack of personal jurisdiction. The Court is required to first decide whether it has jurisdiction over Diamond Carter Trading and Khumpoo before it may consider other grounds for dismissal of the claims against them. *Branson v. Exide Elecs. Corp.*, 625 A.2d 267, 269 (Del. 1993).

> When a defendant moves to dismiss a complaint pursuant to Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the defendant. The court engages in a two-step analysis: the court must first determine that service of process is authorized by statute and then must determine that the exercise of jurisdiction over the nonresident defendant comports with traditional due process notions of fair play and substantial justice. In ruling on a Rule 12(b)(2) motion, the court may consider the pleadings, affidavits, and any discovery of record. If, as here, no evidentiary hearing has been held, plaintiffs need only make a *prima facie* showing of personal jurisdiction and "the record is construed in the light most favorable to the plaintiff."

*Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007) (quoting *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *3 (Del. Ch. Mar. 31, 2003)).

11

The Counterclaim Plaintiffs rely upon one provision of Delaware's long-arm statute to establish personal jurisdiction over Diamond Carter Trading and Khumpoo: 10 *Del. C.* § 3104(c)(1).[22] Section 3104(c)(1) allows the Court to exercise personal jurisdiction over any nonresident who "in person or through an agent . . . [t]ransacts any business or performs any character of work or service in the State[.]" "To establish personal jurisdiction pursuant to Section 3104(c)(1), a plaintiff must demonstrate both that: (1) the nonresident transacted some sort of business in the state, and (2) the claim being asserted arose out of that specific transaction." *Highway to Health, Inc. v. Bohn*, 2020 WL 1868013, at *3 (Del. Ch. Apr. 15, 2020) (internal punctuation omitted). In order for this Court to exercise jurisdiction under Section 3104(c)(1), some act must actually occur in Delaware. *Id.*; *Mobile Diagnostic Gp. Hldgs., LLC v. Suer*, 972 A.2d 799, 804 (Del. Ch. 2009).

"Diamond Carter Trading is a New York limited liability company with a principal place of business in New York, New York."[23] The Counterclaim Plaintiffs argue that Diamond Carter Trading is subject to personal jurisdiction in Delaware because it engaged in transactions with Clovis, a Delaware entity.[24] The Counterclaim Plaintiffs do not allege that any of the transactions described in the

---

[22] Countercl. Pls.' Ans. Br. 19 (Dkt. 93).

[23] Countercl. ¶ 92.

[24] Countercl. Pls.' Ans. Br. 20 (citing Countercl. Ex. 1).

Counterclaims or in Exhibit 1 to the Counterclaims took place in Delaware. Without any factual allegations that an act occurred in Delaware, this Court cannot exercise personal jurisdiction over Diamond Carter Trading under Section 3104(c)(1). *See Mobile Diagnostic*, 972 A.2d at 804.[25]

The Counterclaims do not allege—and the Counterclaim Plaintiffs do not argue—that Khumpoo personally engaged in any act in Delaware. Instead, the Counterclaim Plaintiffs' only basis for personal jurisdiction over Khumpoo is that she holds a membership interest in JAD Trading. The Counterclaim Plaintiffs argue this is sufficient to establish personal jurisdiction over Khumpoo because JAD Trading is alleged to have committed wrongdoing in Delaware.[26] Contrary to the Counterclaim Plaintiffs' argument, however, the Counterclaims do not allege that

---

[25] The Counterclaim Plaintiffs separately argue that "if jurisdictional discovery were to be conducted, it would be revealed that Albert Carter is a resident of Delaware, and would have transacted business on behalf of Diamond Carter Trading in this state." Countercl. Pls.' Ans. Br. 20. This allegation does not appear in the Counterclaims. The Counterclaim Plaintiffs have not introduced any evidence into the record to support this allegation, and the Counterclaim Plaintiffs made no effort to conduct jurisdictional discovery. Accordingly, these allegations are mere speculation and cannot form the basis for personal jurisdiction over Diamond Carter Trading. *See Picard v. Wood*, 2012 WL 2865993, at *2 (Del. Ch. July 12, 2012) (not crediting allegations that defendant "may regularly conduct business in Delaware" as sufficient to justify jurisdictional discovery). Even if this unpleaded allegation can be credited, the Counterclaim Plaintiffs still fail to show a nexus between general transactions of business by Diamond Carter Trading and the Counterclaims, thereby failing the second requirement for establishing personal jurisdiction under Section 3104(c)(1). *See Highway to Health*, 2020 WL 1868013, at *3 (observing that under Section 3104(c)(1), the claim being asserted must arise out of the specific transaction that occurred in Delaware).

[26] Countercl. Pls.' Ans. Br. 20.

13

JAD Trading committed any acts in Delaware. JAD Trading's principal place of business is in Florida. JAD Trading is subject to personal jurisdiction in this action because it is a Delaware LLC. Khumpoo's mere membership in a Delaware entity is not a basis to confer personal jurisdiction. *See In re Gen. Motors (Hughes) S'holder Litig.*, 2005 WL 1089021, at \*22 (Del. Ch. May 4, 2005) (mere ownership of stock is insufficient to establish personal jurisdiction under Section 3104(c)(1)), *aff'd*, 897 A.2d 162 (Del. 2006); *Picard*, 2012 WL 2865993, at \*1 ("It is well-settled under Delaware law that mere membership in a Delaware limited partnership, absent additional considerations, is insufficient to confer personal jurisdiction."). The Counterclaim Plaintiffs have not made a *prima facie* showing that the Court has personal jurisdiction over Khumpoo.

Because the Counterclaim Plaintiffs have not established a statutory basis for personal jurisdiction over Diamond Carter Trading and Khumpoo, the Court need not address whether jurisdiction over them would satisfy due process. The Counterclaims alleged against Diamond Carter Trading and Khumpoo are dismissed for lack of personal jurisdiction under Court of Chancery Rule 12(b)(2).

### B. Motion to Dismiss for Failure to State a Claim

The pleading standards governing a motion to dismiss under Court of Chancery Rule 12(b)(6) are minimal. *Central Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011). On a motion to dismiss for failure

14

to state a claim:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and ([iv]) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible to proof.

*Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (internal citations and quotation marks omitted); *accord Central Mortg.*, 27 A.3d at 536. Although the Court must accept as true the well-pleaded allegations in the Counterclaims, the Court "need not accept inferences or factual conclusions unsupported by specific allegations of fact." *Transdigm Inc. v. Alcoa Glob. Fasteners, Inc.*, 2013 WL 2326881, at *4 (Del. Ch. May 29, 2013). "[A] trial court is required to accept only those 'reasonable inferences that logically flow from the face of the complaint' and 'is not required to accept every strained interpretation of the allegations proposed by the plaintiff.'" *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1082 (Del. 2001)). "Moreover, a claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law." *Malpiede*, 780 A.2d at 1083.

### 1. The Counterclaims State a Claim for Breach of the LLC Agreement.

15

Count I of the Counterclaims asserts that Stone & Paper violated Clovis's LLC Agreement by "engag[ing] in a myriad of self-interested transactions to plunder the assets of Clovis Holdings, and transfer those assets to other entities and persons," including the other Movants.[27] The Movants argue that Count I must be dismissed because the Counterclaim Plaintiffs have failed to allege any contractual duty on the part of Stone & Paper that has been breached.[28]

"[T]o survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of the obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

The Movants argue Count I should be dismissed because the Counterclaims do not identify a specific provision of the LLC Agreement that Stone & Paper has allegedly breached.[29] The Movants acknowledge, however, that any claim alleging

---

[27] Countercl. ¶ 216.

[28] Movants' Opening Br. 13 (Dkt. 83).

[29] At oral argument, counsel for the Counterclaim Plaintiffs identified Sections 4.7, 4.8, 4.9, 5.1, and 6.1 of the LLC Agreement as provisions that have been allegedly breached. Oral Arg. Tr. 41-47 (Dkt. 143) (Damavandi). The Counterclaims do not give rise to a claim for breach of any of these sections. Section 4.7 states procedures for succession in the event that Blanch or Skinner cease to be a manager of the Company. Compl. Ex. A § 4.7. The Counterclaims do not plead that either Blanch or Skinner ever ceased being managers of the Company. *Cf.* Countercl. ¶ 89 ("Counterclaim and Third Party Plaintiff Richard Blanch is a Manager of Clovis Holdings; Brian Skinner is the other Manager of Clovis Holdings."). Thus, the Counterclaims have failed to state a breach of Section 4.7 because

16

Stone & Paper misappropriated Clovis's funds by receiving a return of its capital contribution would be governed by Section 9.6 of the LLC Agreement.[30] Section 9.6 provides, in pertinent part, that "Stone & Paper [] may request the return of its initial Capital Contribution provided such amounts are available and approved by the Board consisting of at least two (2) Managers."[31]

Although the factual allegations in the Counterclaims are not a model of clarity, in viewing the Counterclaims and the documents incorporated by reference as a whole, the Court concludes that the allegations put the Counterclaim Defendants

---

Blanch and Skinner never ceased to be managers of the Company. Section 4.8 grants the managers permission to engage in activities outside of those relating to the Company and explains that neither the Company nor members have the right to share or participate in the managers' outside activities. Compl. Ex. A § 4.8. Section 4.9 states that the managers will receive reimbursement from the Company for reasonable out-of-pocket expenses. *Id.* § 4.9. Sections 4.8 and 4.9 thus only govern the relationship between the managers and the Company and do not impose any obligations on Stone & Paper. Section 5.1 lists "Major Decisions" that require written approval by the board and the preferred members and contains no language imposing obligations on Stone & Paper. *Id.* § 5.1 ("Major Decisions" include consolidation, instituting bankruptcy proceedings, settling any claims against a member, entering into employment agreements, borrowing money other than in the ordinary course of business, and admitting new members). Similarly, Section 6.1 is a limitation of liability clause stating that members of the Company shall not be obligated for debts of the Company solely by reason of being a member of the Company. *Id.* § 6.1. Section 6.1 does not impose any obligations on Stone & Paper.

[30] In their opening brief, the Movants contend that the breach of contract and unjust enrichment claims "rel[y] on the same factual basis, and seek the same damages," and are premised upon Stone & Paper misappropriating Clovis's funds "by receiving a return of some [of] its initial capital contribution." Movants' Opening Br. 34. They then argue that any claim concerning a return of capital is governed by Section 9.6 of the LLC Agreement. *Id.*

[31] Compl. Ex. A § 9.6.

17

on notice of the breach of contract claim. *VLIW Tech.*, 840 A.2d at 611 ("An allegation, though vague or lacking in detail, is nevertheless 'well-pleaded' if it puts the opposing party on notice of the claim being brought against it.").

Under the plaintiff-friendly standard of Rule 12(b)(6), the Counterclaims adequately allege that Stone & Paper engaged in self-interested transactions by taking assets from Clovis without authority. The Counterclaims allege Stone & Paper misappropriated Clovis's funds to pay Diamond Carter Trading's American Express charges for items not pertaining to Clovis. Diamond is a managing member of Diamond Carter Trading, JAD Trading, and Stone & Paper. The Counterclaims allege that Diamond Carter Trading and JAD Trading "took approximately $2,000,000 from Clovis Holdings for themselves."[32] The parties acknowledge that the only capital in the Company came from Stone & Paper's $3,500,000 initial capital contribution. Thus, it is reasonably conceivable that Stone & Paper engaged in self-interested transactions that removed a portion of its initial capital contribution from the Company without the requisite approval under, and therefore in breach of, Section 9.6 of the LLC Agreement.

Drawing all reasonable inferences in Clovis's favor, the Court cannot conclude at this stage that Clovis "would not be entitled to recover under any

---

[32] *Id.* ¶ 169.

reasonably conceivable set of circumstances susceptible to proof" on its claim for breach of contract. *Savor*, 812 A.2d at 897; *see VLIW Tech.*, 840 A.2d at 611 ("In alleging a breach of contract, a plaintiff need not plead specific facts to state an actionable claim. Rather, a complaint for breach of contract is sufficient if it contains 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Such a statement must only give the defendant fair notice of a claim and is to be liberally construed."); *see also Frank Investments Ranson, LLC v. Ranson Gateway, LLC*, 2016 WL 769996, at *6-7 & n.64 (Del. Ch. Feb. 26, 2016) ("Although the Complaint is far from a model of clarity, it contains facts which, when viewed in a light most favorable to Plaintiffs, make it reasonably conceivable that there was mutual assent," [and] "the Court cannot conclude that the Complaint fails to meet Rule 12(b)(6)'s threshold on the question of whether there was mutual consent.").

### 2. The Counterclaims Fail to State Claims for Fraudulent Inducement and Fraud.

Counts II and III allege claims for fraudulent inducement and fraud against Stone & Paper, Carter, and Diamond. "Under Delaware law, the elements of fraud and fraudulent inducement are the same." *Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2018 WL 6311829, at *31 (Del. Ch. Dec. 3, 2018). To survive a motion to dismiss, a plaintiff asserting a fraud-based claim must sufficiently plead:

19

(1) that defendant made a false representation, usually one of fact; (2) with the knowledge or belief that the representation was false, or with reckless indifference to the truth; (3) with an intent to induce the plaintiff to act or refrain from acting; (4) that plaintiff's action or inaction was taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of her reliance on the representation.

*GreenStar IH Rep, LLC v. Tutor Perini Corp.*, 2017 WL 5035567, at \*10 (Del. Ch. Oct. 31, 2017) (quoting *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at \*6 (Del. Ch. Jan. 30, 2015)), *aff'd*, 186 A.3d 799 (Del. 2018).

Allegations of fraud must be pleaded with particularity. Ct. Ch. R. 9(b). An allegation of fraud is legally sufficient under Rule 9(b) if it informs the parties of the precise transactions at issue and the fraud alleged to have occurred in those transactions, so as to place the parties on notice of the precise misconduct with which they are charged. *Kahn Bros. & Co., Inc. Profit Sharing Plan & Tr. v. Fischbach Corp.*, 1989 WL 109406, at \*4 (Del. Ch. Sept. 19, 1989); *see also ABRY P'rs V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006) ("Essentially, the plaintiff is required to allege the circumstances of the fraud with detail sufficient to apprise the defendant of the basis for the claim."). A claimant can satisfy Rule 9(b) by alleging "(1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations." *ABRY*, 891 A.2d at 1050.

The gravamen of the fraud and fraudulent inducement claims is that Stone &

20

Paper, Diamond, and Carter made material misrepresentations to Red Bridge and Blanch regarding: (a) the intent of Stone & Paper's $3,500,000 capital contribution to Clovis, (b) the intended management of Clovis under the LLC Agreement, and (c) their insisting that Vivianna Blanch be the sole owner of Red Bridge. According to the Counterclaims, Blanch and Red Bridge "would not have entered into a business relationship at all with Stone & Paper, John Diamond, and Albert Carter, if Red Bridge and Richard Blanch had known that Clovis's capitalization and [LLC] Agreement were illusory."[33]

The allegations in support of Counts II and III do not satisfy Court of Chancery Rule 9(b).[34] They do not plead the time, place, and contents of any allegedly false representations. This lack of particularity is "fatal to the fraud counterclaim as a matter of law." *GreenStar*, 2017 WL 5035567, at *11 (dismissing fraud claim where complaint failed to how, when, and where the alleged fraudulent statements were made, to whom they were made, and how they were fraudulent); *see also MHS Capital LLC v. Goggin*, 2018 WL 2149718, at *9 (Del. Ch. May 10, 2018) ("Rule 9(b) is not satisfied by the allegation that, at some unspecified time between MHS's investment in 2009 and the usurpation of business opportunities in

---

[33] *Id.* ¶ 243.

[34] The Counterclaim Plaintiffs' brief does not address Rule 9(b). Instead, it asserts—with no citation to any legal authority—that "Counts II and III were sufficiently pleaded in accordance with Ct. Ch. R. 12(b)(6)." Countercl. Pls.' Ans. Br. 15.

April 2015, Goggin made false representations and omitted material facts.").

The allegation that Stone & Paper never intended to permit Skinner and Blanch to serve as the managers of Clovis is conclusory. The LLC Agreement provides for a two-member board of managers.[35] The LLC Agreement expressly names Blanch and Skinner as the managers.[36] The Counterclaims allege that Skinner and Blanch served as managers of Clovis at all times. There are no allegations that Stone & Paper ever served as a manager or held itself out as a manager of Clovis. The Court concludes that the well-pleaded allegations of the Counterclaims do not support a reasonable inference that Stone & Paper had the authority to act as a manager of Clovis. Therefore, the representation that Skinner and Blanch would be the managers of Clovis was not false. Thus, it could not be the basis of a claim for fraud. *See Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 139-40 (Del. Ch. 2009) (rejecting fraud claim where representation was accurate when made).[37]

---

[35] Compl. Ex. A §4.1(a).

[36] *Id.* § 1.1(v).

[37] Although the Counterclaims add the word "omissions" to the term "misrepresentations," the alleged omissions are merely the failure to disclose that the representations upon which the Counterclaim Plaintiffs relied was false. In other words, the Counterclaim Plaintiffs are simply recharacterizing misrepresentations as omissions. *See generally Prairie Cap. III, L.P. v. Double E Hldg. Corp.*, 132 A.3d 35, 51-55 & n.1 (Del. Ch. 2015) (discussing how misrepresentations are reframed as omissions). There is no allegation that the agreement to enter into the LLC Agreement was anything other than an arms' length transaction. Therefore, there was no affirmative duty for Carter or Diamond to speak. *See id.* at 52 ("Because a party in an arms' length contractual setting begins the process without any affirmative duty to speak, any claim of fraud in an arms' length setting necessarily depends on some form of representation. A fraud claim in that setting cannot start from an

22

Counts II and III fail for the additional reason that they are an improper attempt to bootstrap the breach of contract claim in Count I into fraudulent inducement and fraud claims. With the exception of the allegations concerning the demand that Vivianna Blanch serve as the sole member of Red Bridge, there are no allegations of fraud in the Counterclaims distinct from the breach of contract Counterclaims other than conclusory assertions that false representations were involved. The breach of contract claim is based on the assertion that Stone & Paper acted as a board-level manager and misappropriated the funds it invested in Clovis. The fraud claims allege that Stone & Paper, Diamond, and Carter never intended that Blanch and Carter would be the managers of Clovis and that Stone & Paper removed the funds that it invested in Clovis.

A claimant "cannot 'bootstrap' a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations." *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at \*15 (Del. Ch. Dec. 22, 2010) (internal citations and quotation marks omitted); *see also MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at \*17 (Del. Ch. Dec. 30, 2010) ("[A] plaintiff cannot state a claim for fraud simply by adding the term 'fraudulently induced' to a complaint or alleging that the defendant never

omission."). The Counterclaim Plaintiffs do not argue that there is any difference between the alleged misrepresentations and omissions.

23

intended to comply with the agreement at issue at the time the parties entered into it."). "Couching an alleged failure to comply with the [LLC Agreement] as a failure to disclose an intention to take certain actions arguably inconsistent with that agreement is exactly the type of bootstrapping this Court will not entertain." *BAE Sys. N. Am. Inc. v. Lockheed Martin Corp.*, 2004 WL 1739522, at \*8 (Del. Ch. Aug. 3, 2004).

The remaining alleged misrepresentation is not asserted as a breach of contract. The Counterclaims allege that Stone & Paper, Carter, and Diamond insisted that Vivianna Blanch be the sole member of Red Bridge in order to protect the assets of Clovis from Blanch's creditors. That assertion does not state a claim for fraud because it is not alleged to have been a false statement of fact. *See York Linings v. Roach*, 1999 WL 608850, at \*3 (Del. Ch. July 28, 1999) (dismissing fraud claims where the counterclaim did not allege the representations were false at the time they were made).

For the above reasons, this Court concludes that Counts II and III of the Counterclaims fail to state a claim for fraud.

### 3. The Counterclaims Fail to State a Claim for Conversion.

Count IV of the Counterclaims generally alleges that the Movants converted

Clovis's "financial assets."[38] The Movants are alleged to have done so by "transferr[ing] and divert[ing] Clovis Holdings' assets to themselves, directly or indirectly, without the consent of Clovis Holdings."[39] Conversion is "any distinct act of dominion wrongfully exerted over the property of another, in denial of [the plaintiff's] right, or inconsistent with it." *Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933). "Generally, the necessary elements for a conversion under Delaware law are that a plaintiff had a property interest in the converted goods; that the plaintiff had a right to possession of the goods; and that the plaintiff sustained damages." *Goodrich v. E.F. Hutton Gp., Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988).

Although all three Counterclaim Plaintiffs assert this claim, Count IV only alleges the conversion of funds belonging to Clovis. There are no well-pleaded allegations that any Counterclaim Defendant converted anything belonging to Blanch or Red Bridge,[40] and Blanch and Red Bridge allege no factual or legal basis

---

[38] Countercl. ¶ 257.

[39] *Id.* ¶ 259.

[40] The conversion count asserts a conclusory allegation that Red Bridge and Blanch were deprived of "their rights and interests in Clovis Holdings and its assets." Countercl. ¶ 258. Blanch is not a member of Clovis and has not alleged any facts to support an assertion that he has any rights or interests in Clovis or its assets. Nor is there any allegation that Red Bridge's membership interests were reduced or that Red Bridge had any individual right to the Company's assets. A member of a limited liability company has no interest in the specific assets owned by the limited liability company. 6 *Del. C.* § 18-701; *see also In re Opus E., L.L.C.*, 480 B.R. 561, 575 (Bankr. D. Del. 2012) (explaining that just as a shareholder has no personal or individual right of action against a third party for acts causing interest to a corporation, a member (or the member's trustee) does not have a property interest in the limited liability company's property).

for their possessory right to Clovis's financial assets.[41] Thus, Blanch and Red Bridge fail to allege the first two elements of a conversion claim. *See Weiss v. Leewards Creative Crafts, Inc.*, 1993 WL 155493, at \*6 (Del. Ch. Apr. 29, 1993) (dismissing conversion claim where the plaintiff failed to show his cognizable property right and right to possession of the allegedly converted goods), *aff'd*, 633 A.2d 372 (Del. 1993). Accordingly, Blanch and Red Bridge fail to state a claim as to them personally.

As to Clovis, the conversion claim fails because it is a claim for the payment of money.

> Generally, an action in conversion will not lie to enforce a claim for the payment of money . . . . [T]he narrow exception recognized in other jurisdictions . . . allows a claim for conversion of money "only when it can be described or identified as a specific chattel, but not where an indebtedness may be discharged by the payment of money generally." Thus, "an action for conversion of money will lie only where there is an 'obligation to return the identical money' delivered by the plaintiff to the defendant."

*Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 890 (Del. Ch. 2009) (quoting *Goodrich*, 542 A.2d at 1203); *see also Xu Hong Bin v. Heckmann Corp.*, 2009 WL 3440004, at \*13 (Del. Ch. Oct. 26, 2009) (same). The Counterclaim Plaintiffs do not plead that the conversion claim falls within the narrow exception that the Movants have an obligation to return the "identical money" alleged misused.

---

[41] The Counterclaim Plaintiffs did not address this argument in their answering brief. *See* Countercl. Pls.' Ans. Br. 15-16.

Therefore, the conversion claim cannot be enforced.

In their answering brief, the Counterclaim Plaintiffs seek to recast Count IV, arguing that the alleged use of Clovis's funds to purchase a newsletter, a computer server, and event tickets constituted acts of conversion and that Clovis now maintains a property interest in those goods and services.[42] The Counterclaim Plaintiffs' attempt to amend their Counterclaims through their brief is improper. "Arguments in briefs do not serve to amend the pleadings." *Cal. Pub. Emps. Ret. Sys. v. Coulter*, 2002 WL 31888343, at \*12 (Del. Ch. Dec. 18, 2002). A plaintiff "cannot supplement the complaint through its brief." *MCG Capital Corp. v. Maginn*, 2010 WL 1782271, at \*5 (Del. Ch. May 5, 2010); *see also Orman v. Cullman*, 794 A.2d 5, 28 n.59 (Del. Ch. 2002) ("Briefs relating to a motion to dismiss are not part of the record and any attempt contained within such documents to plead new facts or expand those contained in the complaint will not be considered."). Accordingly, Count IV of the Counterclaims is dismissed for failure to state a claim for conversion.

### 4. The Counterclaims, in Part, Fail to State a Claim for Unjust Enrichment.

In Count V of the Counterclaims, Clovis, Red Bridge, and Blanch assert a claim for unjust enrichment against all of the Movants. Count V alleges that

---

[42] Countercl. Pls.' Ans. Br. 16.

Movants "obtained benefits to which they were not entitled, including excessive compensation and diversion of Clovis Holdings' assets to themselves."[43] The Counterclaim Plaintiffs assert that the Movants "have been solely enriched by their actions, at the expense of Clovis Holdings, Red Bridge and Richard Blanch" and that "[i]t would be inequitable" for the Movants "to retain the improperly obtained benefits, for which there was no consideration."[44] The Movants argue the unjust enrichment claims must be dismissed because: (1) the parties' relationship is governed by contract, which precludes an unjust enrichment claim; (2) the allegations are conclusory; and (3) Red Bridge and Blanch have not alleged any impoverishment as to themselves.[45]

Unjust enrichment is the "unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). The elements of unjust enrichment are (i) an enrichment, (ii) an impoverishment, (iii) a relation between the enrichment and impoverishment, (iv) the absence of justification, and (v) the absence of a remedy provided by law. *Id.*; *Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999); *Cantor*

---

[43] Countercl. ¶ 266.

[44] *Id.* ¶ 268.

[45] Movants' Opening Br. 33-37.

*Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 585 (Del. Ch. 1998). Courts developed unjust enrichment as a theory of recovery to remedy the absence of a formal contract. *ID Biomedical Corp. v. TM Tech., Inc.*, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995); *see also The Frederick Hsu Living Tr. v. ODN Hldg. Corp.*, 2017 WL 1437308, at *42 (Del. Ch. Apr. 14, 2017) ("As its name implies, unjust enrichment is a flexible doctrine that a court can deploy to avoid injustice.").

Count V does not allege facts to support a claim that either Red Bridge or Blanch has been impoverished by the enrichment of the Movants.[46] As with the conversion claim, the unjust enrichment claim alleges misappropriation of Clovis's funds, not funds belonging to Red Bridge or Blanch. Accordingly, the unjust enrichment claims asserted by Blanch and Red Bridge are dismissed for failure to allege that Blanch and Red Bridge were impoverished.

The Movants also argue the unjust enrichment claims must be dismissed because the parties' relationship is governed by contract. They argue the unjust enrichment claim relies upon the same factual basis as the breach of contract claim.[47]

---

[46] The Counterclaim Plaintiffs did not address this argument in their answering brief. *See* Countercl. Pls.' Ans. Br. 16-17.

[47] Movants' Opening Br. 34. *Compare* Countercl. ¶ 216 (Count I) (alleging "Stone & Paper engaged in a myriad of self-interested transactions to plunder the assets of Clovis Holdings, and transfer those assets to other entities and persons, such as Diamond Carter Trading, JAD Trading, [Diamond, Khumpoo, Carter,] and Elizabeth Carter"), *and* ¶ 217 ("Stone & Paper investors were contractually prohibited from engaging in such wrongful conduct. Each of the transactions moving funds from Clovis Holdings for the benefit of Diamond Carter Trading, JAD Trading, [Diamond, Khumpoo, Carter,] and Elizabeth Carter were

29

The Movants argue, therefore, that the contract is the sole measure of Counterclaim Plaintiffs' rights.

In evaluating the unjust enrichment claim, the Court must first determine whether a contract governs the parties' relationship. If a contract comprehensively governs the relevant relationship between the parties, then the contract must provide the measure of the plaintiff's rights, and any claim of unjust enrichment will be denied. *Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *27 (Del. Ch. Nov. 26, 2014). "[T]his Court routinely dismisses unjust enrichment claims that are premised on an 'express, enforceable contract that controls the parties' relationship' because damages is an available remedy at law for breach of contract." *Veloric v. J.G. Wentworth, Inc.*, 2014 WL 4639217, at *19 (Del. Ch. Sept. 18, 2014) (quoting *Kuroda*, 971 A.2d at 891); *see also, e.g.*, *Doberstein v. G-P Indus., Inc.*, 2015 WL 6606484, at *6 (Del. Ch. Oct. 30, 2015) (dismissing unjust enrichment claim under Rule 12(b)(6) where plaintiff had not "identified any factual basis for her unjust enrichment claim independent of the allegations relating to her breach of contract claim" and "the Agreement provides the measure of [plaintiff's] rights here"). Furthermore, a plaintiff cannot use "a claim for unjust

---

void and must be rescinded"), *with* Countercl. ¶ 266 (Count V) ("Stone & Paper Investors [and the other Movants] obtained benefits to which they were not entitled, including excessive compensation and diversion of Clovis Holdings' assets to themselves"), ¶ 267 ("Stone & Paper Investors [and the other movants] have been solely enriched by their actions, at the expense of Clovis Holdings, Red Bridge and Blanch").

enrichment to extend the obligations of a contract to [persons] who are not parties to the contract." *Kuroda*, 971 A.2d at 892.

Based upon the allegations of the Counterclaims and the arguments presented at this stage of the proceedings, the Court concludes that, with one exception, the Counterclaim Plaintiffs have not identified a factual basis for the unjust enrichment claim independent of the allegations supporting the breach of contract claim. The essence of the unjust enrichment claim is that the Movants removed funds from Clovis and diverted those funds to themselves. That is the same basis for the breach of contract claim, which the Court has concluded could constitute a breach of Section 9.6 of the LLC Agreement. The one exception concerns the allegation that "Stone & Paper [] paid itself $10,000 monthly in ACH payments . . . from Clovis Holdings' bank account, for a total of $110,000[,] . . . despite providing no services or other consideration to Clovis Holdings in return."[48] As to this allegation of unjust enrichment, the Court cannot conclude at this stage that the LLC Agreement

---

[48] Countercl. ¶¶ 165-66. The Counterclaim Plaintiffs also contend that the unjust enrichment claim does not fail when the contract itself arose from wrongdoing such as a breach of fiduciary duty or fraud. Countercl. Pls.' Ans. Br. 17. This argument is unpersuasive. First, as explained earlier in this opinion, the Counterclaim Plaintiffs have failed to state a claim for fraudulent inducement or fraud. Second, they have not argued that the LLC Agreement was the product of a breach of fiduciary duty. Therefore, this case differs from other situations where the unjust enrichment claim may survive because "the validity of the contract is in doubt or uncertain," *RDUC Peninsula Millsboro, LLC v. Mayer*, 2014 WL 4261988, at *5 (Del. Ch. Aug. 29, 2014), or that "the contract itself is the unjust enrichment," *PR Acquisitions, LLC v. Midland Funding, LLC*, 2018 WL 2041521, at *14 (Del. Ch. Apr. 30, 2018).

comprehensively governs the relationship between Clovis and Stone & Paper.  *See MCG Capital*, 2010 WL 1782271, at *24 (allowing an unjust enrichment claim to survive dismissal where the parties' contract does not appear to govern the payment challenged).  Thus, the allegation that Stone & Paper received monthly payments for no consideration in return supports a claim for unjust enrichment against Stone & Paper.  *See In re Molycorp, Inc. S'holder Deriv. Litig.*, 2015 WL 3454925, at *35 (Del. Ch. May 27, 2015) ("Unjust enrichment claims fail where a validly negotiated contract governs the contested matter, although the Court can be wary of granting a motion to dismiss when it is not clear that the contract governs the entire dispute."); *Narrowstep*, 2010 WL 5422405, at *16 (finding complaint alleged sufficient facts for the court to plausibly infer that contract documents did not comprehensively govern the relationship between the parties as to some issues).  Therefore, the unjust enrichment claim as to $110,000 in compensation to Stone & Paper cannot be dismissed.[49]

The remainder of Count V is dismissed as to all other Movants because their alleged enrichment arises solely from the contractual relationship between Clovis and Stone & Paper.  Other than the allegations concerning the "excessive

---

[49] If it is later determined that the LLC Agreement comprehensively governs the relationship between Clovis and Stone & Paper, the unjust enrichment claim is subject to dismissal for failure to satisfy the fifth element of the claim.  *See Nemec*, 991 A.2d at 1130-31 (Del. 2010) (affirming dismissal of unjust enrichment claim where relationship was governed by contract).

compensation" to Stone & Paper, the unjust enrichment count alleges that all of the

Movants diverted Clovis's assets to themselves.  The allegations of asset transfers

from Clovis that form the basis of the unjust enrichment claim are contract claims

governed by the LLC Agreement.  Accordingly, the unjust enrichment claim as to

all Movants other than Stone & Paper must be dismissed.  *Kuroda*, 971 A.2d at 892;

*see also AM Gen. Hldgs. LLC v. Renco Gp., Inc.*, 2013 WL 5863010, at \*38 (Del.

Ch. Oct. 31, 2013) ("[C]ontractual remedies remain the sole remedies even if the

claim of unjust enrichment is alleged against a party who is not a party to the

contract.").[50]

### 5.    The Counterclaims Fail to State a Claim for Aiding and Abetting a Breach of Fiduciary Duty.

Count VI of the Counterclaims alleges that all of the third-party defendants

aided and abetted Stone & Paper's breaches of fiduciary duty to Clovis.  The

elements of a claim for aiding and abetting a breach of fiduciary duty are:  (1) the

existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing

participation in that breach by the defendants, and (4) damages proximately caused

by the breach.  *Malpiede*, 780 A.2d at 1096.

"[I]t is well settled that only managing members or controllers owe fiduciary

---

[50] Because the unjust enrichment claims against the non-Stone & Paper Movants are dismissed based on the contractual relationship Stone & Paper and Clovis, the Court does not address the argument that the unjust enrichment allegations are conclusory and fail to state a claim.

duties by default in LLCs." *Beach to Bay Real Estate Ctr. LLC v. Beach to Bay Realtors Inc.*, 2017 WL 2928033, at \*5 (Del. Ch. July 10, 2017). Put differently, "[m]anagers and managing members owe default fiduciary duties; passive members do not." *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 662 (Del. Ch. 2012). The Counterclaim Plaintiffs fail to show how Stone & Paper, as a non-managing member, owed fiduciary duties to Clovis. The Counterclaim Plaintiffs ask the Court to find that Stone & Paper usurped the role of a manager to Clovis through its actions of "practically exercis[ing] board-level control" over the Company.[51] As explained above, that allegation is conclusory. It is also contradicted by the allegations in the Counterclaims that Blanch and Skinner are and have always been the only managers of Clovis.[52] Accordingly, the Counterclaims lack well-pleaded allegations that Stone & Paper assumed the role of a managing member of Clovis with attendant fiduciary duties to Clovis. Because the Counterclaims fail to allege a fiduciary duty that could serve as the grounds for an underlying breach of fiduciary duty, the aiding and abetting claim fails as a matter of law. *E.g.*, *Weil v. Morgan Stanley DW Inc.*, 877 A.2d 1024, 1039 (Del. Ch. 2004) ("[H]aving failed to state an underlying claim

---

[51] Countercl. ¶ 144, *see also id.* ¶ 188 (alleging Stone & Paper, through Diamond, "exercised board-level control in the preparation of the tax returns at Citrin Cooperman").

[52] Countercl. ¶ 89 ("Counterclaim and Third Party Plaintiff Richard Blanch is a Manager of Clovis Holdings; Brian Skinner is the other Manager of Clovis Holdings."); *see also* Oral Arg. Tr. 44 (Damavandi).

34

for breach of fiduciary duty against Morgan Stanley itself, Weil's aiding and abetting claim against HarrisDirect necessarily fails."), *aff'd*, 894 A.2d 407 (Del. 2005); *Thermopylae Capital P'rs, L.P. v. Simbol, Inc.*, 2016 WL 368170, at \*18 (Del. Ch. Jan. 29, 2016) ("[A]n aiding and abetting claim is predicated on an underlying breach of fiduciary duties. Here, because I find that [the breach of fiduciary duty claim] fails to adequately allege a breach of duty, I must also dismiss [the aiding and abetting claim] for failure to state a claim."); *Globis P'rs, L.P. v. Plumtree Software, Inc.*, 2007 WL 4292024, at \*15 (Del. Ch. Nov. 30, 2007) ("As this Court has determined that the Complaint fails to state a claim for any underlying breach of fiduciary duty, BEA cannot be liable for aiding and abetting such a breach.").

Accordingly, Count VI is dismissed as to the Movants.[53]

## C. The Motion for a More Definite Statement and Motion to Strike Certain Allegations Are Denied.

The Movants have moved for an order requiring the Counterclaim Plaintiffs to provide a more definite statement in the event the Motion to Dismiss is not granted in its entirety. They have also moved to strike certain allegations in the Counterclaims as immaterial, impertinent, and scandalous. Both motions are denied.

---

[53] The only claim asserted against the Eisenberg Parties is for aiding and abetting a breach of fiduciary duty. Although this opinion addresses only the Movants' motion to dismiss, the grounds for dismissing the aiding and abetting claim against the Movants would equally apply to the Eisenberg Parties as well.

Court of Chancery Rule 12(e) states, in pertinent part: "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing the party's responsive pleading." Ct. Ch. R. 12(e).

Rule 12(e) is designed to remedy problems of unintelligibility, not a lack of detail. *Balin v. Amerimar Realty Co.*, 1993 WL 542452, at *6 (Del. Ch. Dec. 23, 1993). A complaint is sufficiently definite, and relief under Rule 12(e) will be denied, if the complaint "give[s] the opposing party fair notice of the nature of the claim." *Id.* at *5. Many of the allegations in the Counterclaims are vague and conclusory, but they are not unintelligible. They sufficiently provide the Counterclaim Defendants fair notice of the nature of the breach of contract and unjust enrichment claims. "If [the Counterclaim Defendants] find that certain allegations in the [Counterclaims] require more detail, [they] should seek to narrow and clarify the issues through discovery, not by requesting a more definite statement." *Standard General L.P. v. Charney*, 2016 WL 1735155 (Del. Ch. Apr. 29, 2016) (citing *Spanish Tiles, Ltd. v. Hensey*, 2005 WL 3981740, at *2 (Del. Super. Mar. 30, 2005)). Accordingly, the motion for a more definite statement is denied.

The Movants have also moved to strike paragraphs 135-143, 161, 232 and 250-53 of the Counterclaims under Court of Chancery Rule 12(f) on the grounds that

36

they are immaterial, impertinent, and scandalous. Pursuant to Rule 12(f), "the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Ct. Ch. R. 12(f).

Motions to strike are disfavored, and are "granted sparingly and only when clearly warranted with all doubt being resolved in the nonmoving party's favor." *Salem Church Assocs. v. New Castle Cty.*, 2004 WL 1087341, at *2 (Del. Ch. May 6, 2004). Stated affirmatively, a motion to strike is granted if the challenged averments are: (1) not relevant to an issue in the case; and (2) clearly shown to be unduly prejudicial. *Id.*

Mindful that doubts are resolved against the Movants, the Court denies the motion to strike. The Movants understandably take umbrage at these allegations, but the Court cannot conclude that they are wholly irrelevant. The Movants may ultimately discredit these assertions in their entirety, but they "arguably have some relevance" to understanding the relationships among certain parties and the motivation behind some of the alleged conduct giving rise to the Counterclaims. *See Quereguan v. New Castle Cty.*, 2010 WL 2573856, at *6 (Del. Ch. June 18, 2010) (denying motion to strike allegations claimed to be impertinent, scandalous, and immaterial). The Movants have not clearly shown undue prejudice. If the Counterclaims are later determined to be frivolous or brought in bad faith, the Court has the inherent authority to shift fees. *Blue Hen Mech., Inc. v. Christian Bros. Risk*

37

*Pooling Tr.*, 117 A.3d 549, 558 (Del. 2015).  The motion to strike is denied.

## III.  CONCLUSION

For the foregoing reasons, the Motion to Dismiss the Counterclaims is GRANTED as to Counts II, III, IV, and VI in their entirety as to the Movants, and as to Count V in part.  The Motion to Dismiss is DENIED as to Count I and Count V, in part.  The foregoing dismissed claims are dismissed with prejudice pursuant to Court of Chancery Rule 15(aaa).  The motions for a more definite statement and to strike certain allegations are denied.

**IT IS SO ORDERED**.

*/s/ Paul A. Fioravanti, Jr.*
Vice Chancellor
